## THE MASCOTTE.

### CARTER et al. v. THE MASCOTTE. (No. 2.)

*(Circuit Court of Appeals, Second Circuit. July 20, 1892.)*

No. 78.

SHIPPING—PLACE OF DELIVERY—CUSTOM OF PORT.

The custom of the port of New York requiring cargoes of tea to be discharged in the "tea district," on the New York side of the East river, does not apply to a general ship, a minor portion of whose cargo consists of tea; and where such a ship endeavored for nearly three days, without success, to obtain a berth in such district, and afterwards secured a berth elsewhere, which was acceptable to the consignees of the rest of the cargo, she was not liable for the increased cost caused by discharging the tea there. 48 Fed. Rep. 119, reversed in part.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by Carter and others against the steamship Mascotte for breach of contract by bill of lading. The cause was tried below together with another libel by the same parties for damage to cargo. Decree for libelants. 48 Fed. Rep. 119. The claimants of the vessel appeal. Reversed.

*Convers & Kirlin*, (*J. Parker Kirlin*, of counsel,) for appellants.

*Edward L. Owen*, for appellees.

Before WALLACE and LACOMBE, Circuit Judges, and SHIPMAN, District Judge.

WALLACE, Circuit Judge. This is a libel for breach of contract by bill of lading, whereby the steamship undertook to transport certain teas from Amoy, China, and deliver them at the port of New York. The specific breach charged is that, " by the usual and well-known custom of the tea trade in the city of New York, teas arriving from the port in said bill of lading mentioned are to be, and always are, delivered in a certain and customary district," viz., within the tea district, on the New York side of the East river, whereas the steamship discharged the teas at another place within the port, and thereby put the libelants to additional expense in transporting them to the proper place. The teas were shipped as part of a general China cargo, of which about 400 tons was tea, about 2,000 tons was rice, 1,100 tons was sulphur, and the rest was a miscellaneous cargo of Chinese commodities. The steamship arrived in the port of New York May 17, 1891, and was entered at the customhouse on the 18th. From her arrival, and up to May 20th, at noon, her agents at New York endeavored to obtain a berth within the tea district, in order to accommodate the tea consignees, but were unable to do so. Docks are allotted to vessels for discharge in the port of New York by a public officer, a dock master. When the dock master for the tea district was applied to by the vessel's agents, he informed them "emphatically that there was no berth for the steamer, but there might be room towards the latter part of the week." On the morning of the 20th (Wednesday) the agents found that, although there was a possibility of getting a berth somewhat earlier, it was improbable that one could be obtained before the next Monday. Thereupon they engaged a berth at Beard's wharf, and the vessel proceeded there on the same day, and began discharging on the next. The consignees of the rice and sulphur had requested the agents to discharge her there, it being a customary place for the discharge of rice and sulphur. After the berth had been engaged, but the same day, and before the steamer proceeded there, the consignees of the teas notified her agents that they would procure a berth within the tea district on the following day, and protested against the proposed discharge at Beard's wharf. It seems that there had been some change in the situation by reason of which the dock master found himself able to accommodate the consignees of the teas.

The shipper of goods by a general ship has no right to expect that his convenience is to be regarded by the carrier as paramount to that of others who may send their goods on the same voyage to the same port; and before he can complain of the *locus* of a delivery, when it is a place within the port reasonably convenient for all the consignees, he must show the existence of some usage requiring a delivery elsewhere. When such usage is shown, the law implies that all interested—shippers, consignees, and carrier—have consented to be bound by it. But in the absence of such usage, when there are several consignees, the carrier's duty is satisfied by a delivery at a place suitable and reasonably convenient for all. Hutch. Carr. § 359; *Teilman* v. *Plock*, 21 Fed. Rep. 351; *The E. H. Fittler*, 1 Low, 114; *Vose* v. *Allen*, 3 Blatchf. 289. In the present case, while the evidence is ample that the customary place of delivery in the port of New York for tea cargoes in bulk is within the tea district, it does not establish any usage which applies to the facts. It is a comparatively recent occurrence that teas have come into the port of New York as a minor part of a mixed cargo, and we do not agree with the district judge that the well-established usage which requires that cargoes of tea for the port of New York are to be delivered within a certain district on the New York side of the East river compels a delivery at that point of a minor portion of the cargo, against the known wishes of the consignees of the larger portion. The practice shown in some instances, by which masters or agents of vessels have invoked the assistance of tea consignees in finding a berth for their vessels, does not rise to the dignity of a usage. We think the steamship performed her whole duty to the libelants. She was under no obligation to discharge in the tea district, but, in the attempt to accommodate the tea consignees, she made all reasonable efforts to procure a berth there, in order to do so. After this she engaged a berth elsewhere, which was not only acceptable to the other consignees of the cargo, but was the one preferred by them, and the libelants had no just reason for complaint because she went there. The decree is reversed and the cause remitted, with instructions to the district court to dismiss the libel, with costs of the district court and this court to be paid by the libelants.